**DUNBAR FURNITURE & MFG. CO., Plaintiff-appellant, v. SCOTT FURNITURE CO., ET AL, Defendants-appellees.**

- Ohio Appeals, Eighth District, Cuyahoga County.

No. 19803.  Decided December 11, 1944.

A. C. Nozik, Cleveland, Nadler & Nadler, Cleveland, for plaintiff-appellant.

John W. Scott, Cleveland, for defendants-appellees.

### OPINION

By MORGAN, P. J.

The plaintiff as a creditor of The Scott Furniture Company brings this action to set aside conveyance of all of the assets of The Scott Furniture Co., to defendant, Robert Akers, on the ground that such conveyance was in fraud of creditors and in violation of §11102 GC., commonly known as the Bulk Sales Act.

The record in this case discloses that the defendant Akers, was the owner of all of the capital stock, except qualifying shares, of The Scott Furniture Company, an Ohio corporation.

The company in the summer of 1942 got into financial

difficulties. It was back in its rent and its landlord was threatening eviction. The company's attorney met the principal creditors of the company who were attending a furniture show in New York, and they designated one Meyer, representing the largest creditor, to go to Cleveland, take an inventory of the company's assets and then recommend action by the creditors.

Meyer went to Cleveland, took an inventory and called a general creditors meeting for September 2, 1942. At that meeting in which creditors having claims totalling in excess of $15,000.00 were represented either directly or by attorneys, Meyer reported the liabilities of the Company to be $21,566.18. The principal assets consisted of furniture which, at cost, inventoried $20,543.39. In addition, accounts receivable were valued at $2141.56 with a cash item of only $250.00. At that meeting the defendant, Akers, stated that he was ready to purchase all of the assets of the company at a figure which would net the creditors 50% of the face value of their claims. The creditors present, with the exception of plaintiff, represented by its attorney, stated in reply that if Akers would increase his offer for the assets to net the creditors 60% of the face value of their claims they would recommend the acceptance of such an offer. Akers finally agreed to this proposition.

The plaintiff, through its attorney, stated at the meeting that it would accept nothing less than one hundred cents on the dollar.

An attorney representing a number of the claims suggested that the company proceed to sell its assets under the Bulk Sales Act §11102 GC. Accordingly, on Sept. 3, 1942, the Scott Furniture Company sent a notice to all of its creditors, stating the offer made by Akers namely, to purchase all of the assets of the company for an amount which would net the creditors 60% of the face value of their claims, and stating that the purchase would be executed on Sept. 9, 1942. Attention was called to the fact that the landlord had filed eviction proceedings and that execution would be levied against the company on Sept. 10, 1942.

The notice called attention to the meeting of the creditors held on Sept. 2, 1942 and with reference to this meeting the notice stated:

"It was the consensus of opinion of the majority of the

creditors present, both in amount and number, that the best interests of the creditors would be served by a sale of the assets in accordance with the offer and in accordance with the Bulk Sales Law of the State of Ohio, and that such a sale would net more for the creditors than an orderly liquidation or bankruptcy."

The receipt of this notice was ackknowledged by plaintiff in letters dated Sept. 9, 1942, addressed to Akers and to The Scott Furniture Co.

On Sept. 9, 1942, Akers purchased all of the assets of the company for $13,340.30 in cash, the amount necessary to pay taxes and the creditors sixty cents on the dollar.

The plaintiff brought this action to set aside the sale and transfer of the assets to Akers, alleging that the property and assets sold were admittedly worth in excess of $22,934.95. That the defendants "fraudulently and wilfully selected the week-end of Labor Day, September 5th to 7th, 1942, inclusive, for mailing the notice and concluded the sale on September 9, 1942, knowing full well that substantially all of the creditors of The Scott Furniture Company were located in distant points throughout the United States and that accordingly the said notice was not a compliance with §11102 GC." The record also discloses that the defendant, Akers, had a two-thirds interest in The Hathaway Rug & Carpet Company, a creditor of The Scott Furniture Company, in the sum of $1600.00, and plaintiff alleged that the sale of the assets to Akers was a preference to him through his interest in The Hathaway Rug & Carpet Co.

The record discloses that the plaintiff was the only one of 76 creditors who objected to the sale of the assets of The Scott Furniture Company to Akers on the terms mentioned. Although the cost price of the furniture the principal asset of the company, was $20,543.39, there is no evidence in the record as to when the furniture was purchased, as to its condition at the time of sale, and as to the amount that would probably have been realized for the assets by orderly liquidation or by proceedings in bankruptcy.

There was, therefore, a complete failure to prove that the sale price of the assets was too low or that the amount realized for the creditors by the sale was not more than could have been realized in any other manner.

We also find that the fact that the notice to creditors was

sent to them on Sept. 3. 1942, the day following the holding of the creditors meeting, as to the sale to be executed on Sept. 9, 1942, was not fraudulent. The fact that Labor Day intervened was only an accident. The plaintiff admits that the notice was received by it and no other creditor is objecting to insufficient notice.

Also, there is nothing in the record to show that The Hathaway Rug & Carpet Co., receives more than 60% of its claim and therefore the claim of preference to that company was not proved.

This court realizes that when the sole stockholder of a company purchases all of its assets for an amount insufficient to pay all of its creditors in full, such a transaction should be carefully scrutinized. On the other hand, a single creditor should not be permitted to overturn such a sale, without credible and convincing evidence, against the opinion of all of the other creditors, that the price realized on the sale was below the true value of the company's assets and in fraud of creditors.

For the reasons stated, the decree in this case will be for the defendants.

SKEEL, J., & LIEGHLEY, J., concur.